**Sean C. Chapman**
**Law Office of Sean C. Chapman, P.C.**
100 North Stone Avenue, Suite 701
Tucson, Arizona 85701
Telephone: (520) 622-0747
Fax: (520) 628-7861
Arizona State Bar No. 012088
Attorney for Defendant Bowen
Sean@seanchapmanlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Matthew Bowen, ) <br> ) <br> Defendant. ) <br> _____ ) | CR 18-01013-001-TUC-CKJ(BPV) <br><br> **REPLY IN SUPPORT OF MOTION TO SUPPRESS TEXT MESSAGES OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT** |

The Defendant MATTHEW BOWEN, through counsel Sean C. Chapman of THE LAW OFFICE OF SEAN C. CHAPMAN, P.C., hereby replies to the Government's Response (Doc. 41) and, for the additional reasons set forth below, moves this Court to suppress all text messages sent or received on any date other than December 3, 2017.

The Governments recitation of the facts clarifies and supports the operative point that is at the heart of the Fourth Amendment question presented here; that is, that federal agents learned of text messages between Bowen and Agent Jaseph on the same date as the conduct alleged in Count I, December 3, 2017. (Doc. 41 at p. 3.) Although

the Government asserts that "federal agents learned that the defendant communicated with *at least one* of the other responding Border Patrol agents via text message later that same day about the incident," *id.* (emphasis added), that characterization is incorrect. The paragraphs of the search warrant affidavit cited by the Government, ¶¶ 16-17, describe what Agent Jaseph told investigators. He said that after he met in person with Bowen after the incident on December 3, 2017, the two of them exchanged a few text messages *on that day*, which Jaseph subsequently deleted. Nothing in those paragraphs, or anywhere in the affidavit, does Jaseph or any other person suggest that Bowen was texting with any other agent, besides Agent Jaseph or that he and Jaseph texted each other at any later point.

That critical fact was further corroborated by the Government's own investigation prior to obtaining the search warrant for Bowen's and Jaseph's cell phones. Data obtained from the service showed that these two agents were in communication with each other on the day of the incident. (*Id.*, citing Search Warrant Affidavit at ¶¶ 18-24.) For this reason, the Government has mischaracterized Bowen's argument as to the overbreadth of the warrant. (Doc. 41 at pp. 7, 9.) Bowen maintains that the warrant authorizing the search of his cell phone offended the Fourth Amendment's specificity requirement. "Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by

the probable cause on which the warrant is based." *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856-57 (9th Cir. 1991).

The Government cherry-picked passages from the warrant to support its reading that the warrant authorized a wholesale search of Bowen's phone, so long as the evidence it seizes "pertains in any way" to the December 3, 2017 civil rights crime. (*Id.* at p. 4.) In fact, the warrant limited agents to search only those portions of the electronic storage media "that reasonably appear to contain some or all of the evidence described in the warrant." (Affidavit at ¶ 30.) The only text message evidence described in the warrant were those between Bowen and Joseph on one specific date. The affidavit established probable cause to believe evidence of a crime would be found *only* on text messages sent or received on December 3, 2017.

The scope of a search is limited by the probable cause upon which the warrant is based. *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d at 856-57; *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009). Thus, by the express written language of the warrant itself, agents were <u>not</u> authorized to search every part of Bowen's phone. For instance, they could not have searched email, photos, social media applications, other messaging applications such as What's App or those with internal messaging capabilities such as Facebook, Twitter or Words with Friends. Nor were agents permitted to search, as they did, four months' worth of text messages (1328 individual messages) that Bowen sent and received to anyone. Bowen's cell phone was not a free-for-all for the agents to search. It was limited to the probable cause

set forth in the Affidavit, which in turn was limited to December 3, 2017. Contrary to the Government's argument, the date restriction was created by the warrant affidavit itself. It is not a creation of the defense, nor is it nonsensical to rely on the plain language of the affidavit. (Doc. 41, p. 10, citing *United States v. Gorman*, 104 F.3d 272, 275 (9th Cir. 1996) ("Plain meaning and common sense are landmarks for the execution and interpretation of the language of the search warrant.") (citations omitted)).

Four of the six cases cited by the Government on the Fourth Amendment's particularity requirement do not address electronic records,[1] which are subject to unique analysis since the Supreme Court's unanimous opinion in *Riley v. California*, 573 U.S. 373 (2014) (imposing a search warrant requirement for the search of cell phones and putting the scope of a wholesale cell phone search in perspective by explaining that "it would typically expose to the government far *more* than the most exhaustive search of a house.") 573 U.S. at 396, 401 (emphasis in original). The other two cases address searches of computers but predate *Riley,* as well as the seminal Ninth Circuit opinion on searches of electronic records, *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) (reversed on other grounds).[2] In *United States v. Wong*, 334 F.3d 831 (9th Cir. 2003), agents executing a search warrant during a murder

---

[1] *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) (searches of business, home, safe deposit box and person); *United States v. Marques*, 600 F.2d 742 (9th Cir. 1979) (search of home); *United States v. Mann*, 389 F.3d 869 (9th Cir. 2004) (search of campsite); *United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982) (search of business).

[2] That case is discussed in Bowen's Motion to Suppress and therefore will not be revisited here. (Doc. 29 at p. 5.)

4

investigation discovered child pornography while searching the defendant's computer. 334 F.3d at 835. The Ninth Circuit held that the search of the computer was justified when the search warrant permitted a search of computers for "data as it relates to this case" because it was reasonably believed that depictions or information relating to the murder could be located on the computer. *Id.* at 836. In *United States v. Adjani*, 452 F.3d 1140 (9th Cir. 2006), the Court cautiously upheld seizures of intermingled documents in the computer context, but stated in prescient fashion:

> "The contours of [the Fourth Amendment's] protections in the context of computer searches pose difficult questions. Computers are simultaneously file cabinets (with millions of files) and locked desk drawers; they can be repositories of innocent and deeply personal information, but also of evidence of crimes.... As society grows ever more reliant on computers ... courts will be called upon to analyze novel legal issues and develop new rules within our well established Fourth Amendment jurisprudence."

*Id.* at 1151. Indeed, those "new rules" began to take shape in *Comprehensive Drug Testing* and *Riley*, two important cases the Government ignores in its filing. The Government similarly fails to address Bowen's well-supported argument that interpreting the scope of the warrant at issue requires the Court to exercise "vigilance" in striking the right balance between the government's interest in law enforcement and the right of individuals to be free from unreasonable searches and seizures. (Doc. 29 at pp. 5-6.)

Finally, this Court should reject the Government's effort to save the unconstitutional seizure in this case. Gerome Gage, Special Agent of the U.S. Customs and Border Protection Office of Professional Responsibility conducted the investigation

leading to Bowen's indictment. He was the affiant who secured the search warrant. He conducted the search of Bowen's cell phone. Gage knew his warrant affidavit established probable cause as to text messages sent or received on December 3, 2017, therefore his seizure of texts well before and after that date does not constitute "objectively reasonable reliance" on the warrant, as is required for the good faith exception to apply. *United States v. Leon*, 468 U.S. 897, 992 (1984).

With respect to the plain view doctrine, once again the context of a cell phone search requires a judicious analysis. The concern is that, "[o]nce the government has obtained authorization to search the hard drive [or phone], the government may claim that the contents of every file it chose to open were in plain view and, therefore, admissible… ." *Comprehensive Drug Testing, Inc.*, 621 F.3d at 1176. This reasoning appears to pertain most aptly to a search of every application on an individual's cell phone, which, as stated above, would offend the Fourth Amendment. But here, the extraction of Bowen's text messages was accomplished electronically, by connecting the phone to a computer and then running a program called Cellebrite. This circumstance makes the plain view analysis inapplicable. As the Supreme Court explained, "[t]he rationale of the plain-view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment – or at least no search independent of the initial intrusion that gave the officers their vantage point." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Bowen

did not leave his text messages in open view, nor did he relinquish his expectation of privacy in all of his text messages. The only reason the agents were in a position to view them was because Cellebrite was run to extract all of the text messages on Bowen's phone. The government should have restricted the extraction to December 3, 2017. Alternatively, as with searches of computers, agents could have utilized a taint team to separate text messages sent or received on that date from any others. *See, e.g. United States v. Sedaghaty*, 728 F.3d 885 (9th Cir. 2013).

For all the reasons set forth in the Motion to Suppress should be granted.

Respectfully submitted this 7th day of March, 2019.

LAW OFFICE OF SEAN CHAPMAN, P.C.

BY:   /s/  Sean Chapman
           Sean Chapman

### CERTIFICATE OF SERVICE

The undersigned certifies that on March 7, 2019, he caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification to the following:

Monica Ryan
Monica.Ryan@us.doj.gov
US Attorney's Office – Tucson, AZ
405 W. Congress, Suite 4800
Tucson, AZ 85701-4050

Serena Lara