ELIZABETH A. STRANGE
First Assistant United States Attorney
District of Arizona
LORI L. PRICE
State Bar No. 025698
MONICA E. RYAN
Assistant United States Attorneys
United States Courthouse
405 W. Congress, Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Email: lori.price@usdoj.gov
       monica.ryan@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 18-1013-TUC-CKJ (BPV) |
| Plaintiff, | GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE TO PRECLUDE TEXT MESSAGES PURSUANT TO FED.R.EVID. 401 & 403 |
| vs. | |
| Matthew Bowen, | (Doc. 53) |
| Defendant. | |

Plaintiff, United States of America, by and through its undersigned attorneys, hereby opposes the defendant's motion *in limine,* which seeks to preclude the government from introducing the defendant's text messages at trial. Because the defendant is seeking the exclusion of relevant evidence admissible pursuant to Federal Rule of Evidence 401, his motion should be denied.

**I.    Facts**

On December 3, 2017, defendant Matthew Bowen, while employed as a United States Border Patrol agent, intentionally struck the victim in the back with his government-issued Ford F-150 truck to stop the victim from fleeing and arrest him for the misdemeanor offense of unlawful entry into the United States.  The defendant's decision to use deadly

force against a person who was running away from him and posed no threat is the basis for Count 1 of the Indictment.

There are a number of text messages sent by the defendant to other agents that speak to the defendant's state of mind and intent in committing this civil rights crime.  His text messages also show his subsequent effort to cover up his crime, which is the basis for Count 2 of the Indictment.

For instance, on December 4, 2017, the day after the crime, the defendant admitted he intentionally hit the victim with his truck when texted another agent:

> . . . I used an f150 to do a human pit maneuver on a guat running from an agent. It was in front of cameras and everybody thought I ran him over so they made it into an SIR even though the tonk was totally fine. Just a little push with a ford bumper.

(Government's Disclosure Bates (Bates) 403).[1]  The law enforcement term "PIT," Precision Immobilization Technique, is a maneuver in which a law enforcement vehicle disables a fleeing target vehicle by applying lateral pressure on the rear quarter panel of the fleeing vehicle so it spins out and stops.[2]  A "human pit maneuver" is not a recognized law enforcement term but it is an accurate description of the defendant's actions in the charged crime.  The video of the crime shows the defendant hitting the victim who was fleeing and it is the defendant's contact via his F-150 with the victim that causes the victim to fall to the ground and stop fleeing.  The defendant's description of the incident, as "a human pit maneuver," in this text message provides insight into the defendant's state of mind.

---

[1] The government is providing all pages of its disclosure referenced herein as Exhibit 1 to this response, so the Court can review the appropriate context of the defendant's text messages.  Exhibit 1 will be filed under seal to protect the personal information of the individuals with whom the defendant was communicating.

[2] http://www.policechiefmagazine.org/effects-esc-pit/.

In another message to a different agent, on December 6, 2017, three days after the incident, the defendant again states his purposeful intent to hit the alien with his truck to force him to stop running:

> If I had to tackle the tonk I would still be doing memos and shit. I wonder how they expect us to apprehend wild ass runners who don't want to be apprehended?

(Bates 351).

As evidenced by his text messages, the defendant's characterization of his actions and his intent changed after (1) he learned on December 7, 2017 that his law enforcement authority was revoked based on the incident and he was "put on light duty," (2) he talked with the union lawyer who, according to the defendant, was "freaking out about it," and who told him that he was facing serious charges, and (3) he learned that OIG agents were interviewing other Border Patrol agents about the incident. (Bates 272, 404, 341, and 351-352). Armed with information now that he was likely facing serious consequences for his decision to use a truck to stop the victim from fleeing, the defendant told another agent about a week and a half after the incident:

> . . . I went up and talked to [the Border Patrol union attorney] the other day. I submitted a supplemental report that documents how it was unintentional, accidental and I was not familiar with how responsive the acceleration was on those new F-150s etc.

(Bates 342). When asked what the union attorney said, the defendant replied:

> He was clear that they could still try to push whatever they want to do but me preemptively putting that report out there will make it difficult to establish that my intent was to do harm.

(Bates 342). In responding to a text from another agent asking how he was doing a couple weeks after the incident, the defendant stated:

> Yea Im good. Chasing a guat with an f150 and accidentally bumped him at like 7 mph. bc the port guys were watching with their cameras they JICed it bc it looked like I could have run him over from that angle. Guat was totally

- 3 -

> uninjured didn't want to allegate or anything. But now it ll prob be an investigation for 2 yrs.

(Bates 330). These are examples of some of the relevant text messages that inform a fact finder of the defendant's intent and his efforts to cover-up his crime with the subsequent false report.

The false report that is the basis of Count 2 of the Indictment was submitted by the defendant on December 12, 2017. The defendant submitted the supplemental memorandum to the Chief Patrol Agent (even though no one had requested it). In the memo he claimed: that he was unfamiliar with the particular F-150 truck he was driving on December 3, 2017, including its braking and acceleration power; that he accelerated towards the victim because he wanted to get close enough to him to exit his vehicle and detain him without having to physically exhaust himself by pursuing him on foot; that he wasn't sure if the vehicle had contacted the victim but he saw the victim fall to the ground, so he stopped the truck; that he made a mistake of getting too close to the victim while accelerating; and stated that "in the future, I will adjust my tactics so that accidents like this do not occur." (Bates 273-274). The defendant's own statements in the text messages above contradict his claims in his memo.

The defendant also sent a number of text messages expressing discontent with Border Patrol's limitations on how agents can apprehend aliens and his disgust with the aliens he encounters in his job. For instance, on November 20, 2017, the defendant sent a fellow agent this message, providing insight into his view of the aliens he apprehends:

> mindless murdering savages. PLEASE let us take the gloves off trump! and we all just responded to code to 2 agents trying to catch 5 tonks at the fence in mariposa, tonks starting rocking caused one agent to fall and sustain a gash to his arm. Disgusting subhuman shit unworthy of being kindling for a fire.

(Bates 402). The following day on November 21, 2017, the defendant sent the same agent another message voicing his dissatisfaction with Border Patrol's policies on apprehending aliens:

> Ive really come to realize the whole government is a fucking failed system, this is a failed agency its sad bc BP does really important work but we are treated like shit, prosecuted for doing what it takes to arrest these savages and not given appropriate resources to fully do our job. . . .

(*Id.*). Continuing that conversation on the same day, the defendant states:

> I feel like I would def miss certain aspects of it. The chase of hunting down shitbags with your crew, defeating somebody who thought they were faster than you. Im to the point where there is more negative than positive and if I can make a lot more money in a different career field then I feel like I owe it to my family to try and do that.

(Bates 403). He also stated on December 8, 2017 in a text message that "BP is just meant to destroy guys that want to catch people." (Bates 332). Describing Guatemalans he encounters, he said "Guats are best made crispy with an olive oil from their native pais." (Bates 331).

The above text messages are examples of the defendant's own statements that the government would seek to introduce at trial as evidence of his intent to commit the charged crimes and his state of mind when he hit the alien with his government-issued F-150.

Contrary to defendant's implication in his motion, the government is not intending to offer into evidence all text messages produced to the defendant in discovery. The government has no plans to offer irrelevant information as evidence in its case-in-chief at trial, such as information about the defendant's trucking business or other family matters unrelated to his employment as a Border Patrol agent. The Government provided the more than 1300 text messages in compliance with its discovery obligations, as they are recorded statements by the defendant that are in the government's possession.

## II.     Law and Analysis

Relevant text messages seized from the defendant's cell phone tend to prove his guilt and should be admitted into evidence, pursuant to Federal Rules of Evidence 401 and 403. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence, and (b) the fact is of consequence in determining the action." Fed.R.Evid. 401.

### A. The Government Must Prove Defendant Acted Willfully for the Jury to Convict Him of the Crime Alleged in Count One

Count 1 of the Indictment charges the defendant with a violation of Title 18, United States Code, Section 242. For a jury to find the defendant guilty, the government must prove the following elements[3] beyond a reasonable doubt:

First:     That the defendant acted under color of law;

Second:     That the defendant deprived the victim, A.L.-A., of rights secured and protected by the Constitution or laws of the United States; in this case, the right to be free from unreasonable seizure by one acting under color of law;

Third:     That the defendant acted willfully; and,

Fourth:     That the offense resulted in bodily injury to A.L.-A.

To prove that the defendant acted willfully, the government must show that he intended to do what the Constitution forbids. In the context of this case, the government must prove that the defendant intended to use more force than was reasonable under the circumstances. *See* 2 Kevin O'Malley, Jay Grenig, & William Lee, Federal Jury Practice & Instructions, § 29 (2000) (defining "willfully"); *Screws v. United States*, 325 U.S. 91, 105-06 (1945) (holding that a defendant acts "willfully" when he "act[s] in open defiance

---

[3] *United States v. Lanier*, 520 U.S. 259, 264 (1997) (outlining elements of 18 U.S.C. § 242); *United States v. Price*, 383 U.S. 787, 793 (1966) (elements of 18 U.S.C. § 242 offense).

or in reckless disregard of a constitutional requirement."); *see also United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997); *United States v. Reese*, 2 F.3d 870, 881 (9th Cir. 1993).

To meet its burden of proof, the government must present evidence of the defendant's subjective intent. Specifically, the government must prove that the defendant acted willfully when he accelerated his government-issued Ford F-150 into the back of a person fleeing from arresting agents. The defendant's belief that Border Patrol was too restrictive in what it allows its agents to do to "apprehend wild ass runners who don't want to be apprehended" is relevant to whether the defendant willfully used his F-150 to effect the arrest of the fleeing alien in this case. The defendant's belief that the aliens he encounters in the field are "disgusting subhuman shit unworthy of being kindling for a fire" makes it more probable that the defendant thought it appropriate to use his F-150 to effect the arrest despite the significant danger to the alien of being run over. The defendant's statements about his purposeful intent to hit the victim and then his subsequent change of story to claim it was an accident are also relevant to whether the defendant acted willfully and whether he attempted to cover-up his crime by filing a false report. This evidence is relevant and necessary to the government's case-in-chief.

**B. The Government Must Prove Defendant's Intent to Impede Investigation for the Jury to Convict Him of the Crime Alleged in Count Two**

Count 2 of the Indictment charges the defendant with a violation of Title 18, United States Code, Section 1519. For a jury to find the defendant guilty, the government must prove the following elements beyond a reasonable doubt:

<u>First</u>:   That the defendant knowingly falsified a record or document; and

<u>Second</u>:   That the defendant acted with the intent to impede, obstruct or influence an actual or contemplated investigation of a matter within the jurisdiction of any

department or agency of the United States.  *United States v. Gonzalez*, 906 F.3d 784, 795-96 (9th Cir. 2018).

To meet its burden of proof, the government must present evidence of the defendant's awareness of an investigation and his intent to impede that investigation.  The government will offer the defendant's text messages about these things, as described above, to meet its burden of proof.  The text messages in which the defendant states that he purposefully hit the alien and then the subsequent text messages, after he is aware of the investigation, that he accidentally hit the alien are all relevant and probative of the defendant's intent in Count 2.

### C. Defendant's Text Messages Should Be Admitted Pursuant to Rule 403

Because text messages in which the defendant discusses the crime and his knowledge of the investigation into his actions are clearly relevant, the Court must then consider whether such evidence presents a danger of unfair prejudice pursuant to Federal Rule of Evidence 403, in deciding whether or not to admit it.  "Situations in this area call for balancing the probative value of and need for the evidence against the harm likely to result from its admission." Fed.R.Evid. 403, advisory committee notes (1972).

"All evidence which tends to establish the guilt of a defendant is, in one sense, prejudicial to that defendant, but it does not mean that such evidence should be excluded.  It is only when the probative value of the evidence is 'substantially outweighed by the danger of unfair prejudice' that relevant evidence should be excluded." *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982) (quoting Fed.R.Evid. 403) *overruled on other grounds by Huddleston v. United States*, 485 U.S. 681 (1988).  "Rule 403 is concerned with *unfairly* prejudicial evidence, i.e., evidence that 'has an undue tendency to suggest a decision on an improper basis such as emotion or character rather than evidence presented on the crime charged.'" *United States v. Shields*, 673 Fed.Appx 625, 627 (9th

Cir. 2016) (unpublished)[4] (quoting *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991) (emphasis in original). "'Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403, advisory committee notes (1972).

Relevant evidence by nature is prejudicial, since it tends to make it more likely that a defendant is guilty of the charged crime. Because evidence of the defendant's intent is critical in this case, the defendant must show a high degree of unfair prejudice to have such relevant evidence excluded under Rule 403 balancing: "the greater the degree of probativeness possessed by the evidence, the greater the showing of unfair prejudice that will be required to exclude the evidence." *Bailleaux* at 1111.

The defendant's intent, and any evidence relevant to it, is the crux of this case. Whether the defendant acted willfully is a high burden. The government must prove to the factfinder what the defendant was thinking. The defendant, via his false report, has claimed his assault with the F-150 was an accident. The text messages, the defendant's statements to his confidants, show otherwise. These text messages are relevant to the defendant's intent. Text messages seized from the defendant's phone are direct evidence of his intent regarding both Count 1 and Count 2 of the Indictment. The defendant voiced significant dissatisfaction with restrictions Border Patrol placed on its agents in how they could apprehend aliens and do their jobs. He also voiced great disdain for the aliens. These text messages are relevant to whether he willfully used an F-150 in this crime to effect an arrest of the alien. Likewise, the defendant's disdain for the "subhuman" aliens (Bates 402) is relevant to whether he willfully chose to use a deadly weapon, his F-150, to stop an alien committing a misdemeanor from fleeing. The defendant's admissions to other agents that

---

[4] Ninth Circuit Rule 36-3 allows for citation of unpublished decisions issued on or after January 1, 2007.

he "pushed" or "bumped" the victim with his truck, and then his subsequent claims that he accidentally hit the victim are relevant to whether the defendant's use of force was willful. Such evidence is highly probative to the defendant's subjective intent, which the government must prove in this case. The defendant has not made a showing of unfair prejudice that would require the exclusion of this highly probative evidence. Indeed, the defendant's text messages about these subjects are probative of his intent, and are therefore admissible, as they do not contain material that would "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

Further, despite the defendant's assertions to the contrary, text messages referencing his conversations with union attorney Jim Calle are relevant and any concerns can be easily cured by a limiting instruction from the Court. "In reaching a decision on whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." Fed.R.Evid. 403, advisory committee notes (1972) (citing Rule 106 and Advisory Committee's Note thereunder).

Finally, the defendant's assertion in his motion that none of his text messages with Agent Swartz "should be admitted at trial because none are relevant," is simply false. Notably, the defendant categorized his "human pit maneuver" text to Agent Swartz as a message that "Could be Perceived as Racist or Offensive" (Doc. 53-1 p. 2), when the content of the message is focused on the exact events at issue in this case. A message where the defendant references his use of deadly force as "just a little push with a ford bumper," obviously undermines his blanket assertion that none of the defendant's text messages to Agent Swartz are relevant, as this message is a clear admission of his willful conduct.

### III. Conclusion

The government requests the defendant's motion *in limine* to exclude the defendant's text messages be denied. The defendant is seeking the exclusion of relevant evidence that tends to prove his guilt, which is clearly admissible pursuant to Rule 401. The government respectfully submits that the probative nature of the defendant's text messages outweighs any unfair prejudice, meeting the Rule 403 balancing test, and thus, the evidence should be admitted.

Respectfully submitted this 2nd day of May, 2019.

> ELIZABETH A. STRANGE
> First Assistant United States Attorney
> District of Arizona
>
> *s/ Monica E. Ryan*
>
> MONICA E. RYAN
> LORI L. PRICE
> Assistant U.S. Attorneys

Copy of the foregoing served electronically or by other means this 2nd day of May, 2019, to:

Sean C. Chapman, Esq.

- 11 -