**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>v.<br><br>Matthew Bowen,<br><br>                    Defendant. | No. CR-18-01013-001-TUC-CKJ (DTF)<br><br>**ORDER** |

Pending before the Court are Defendant's Motions in Limine. (Docs. 31 and 53). Oral argument was held on July 2, 2019. (Doc. 80).

The facts of this case have been previously outlined in prior documents, but the Court will provide a brief summary of the relevant facts. On December 3, 2017, Border Patrol Agent Matthew Bowen ("Defendant") apprehended a suspected undocumented alien ("A.L.-A.")[1] by striking him with his vehicle (the "Incident"). In connection with the Incident, the Defendant was charged with a violation of 18 U.S.C. § 242. On December 12, 2017, Defendant submitted a supplemental report (the "Report") describing the Incident. In the Report, Defendant alleged that he was unsure of whether his vehicle had contacted A.L.-A. and that he never intended to strike, scare, or come into contact with A.L.-A. The government alleges that the information contained within the Report is false and has charged Defendant with a violation of 18 U.S.C. § 1519.

On March 22, 2018, a search warrant was issued and the government obtained text

---

[1] The Court will use the abbreviation for the victim as provided by the government in the Indictment.

messages exchanged by Defendant discussing the Incident. The scope of that warrant was the subject of a motion to suppress filed by Defendant. (Doc. 29). The Court granted, in part, and denied, in part, that motion. (Doc. 79). Subsequently, Defendant filed the two pending motions in limine. The Court will address each motion individually.

*1. Motion in Limine to Preclude Witnesses from Opining on Ultimate Legal Issue*

In this motion, Defendant seeks to preclude the government from eliciting testimony from agents or other witnesses that Defendant's actions seemed unreasonable, excessive, shocking, or not in conformance with typical Border Patrol training or the Border Patrol's Use of Force Policy. Defendant argues that for a violation of § 242, a jury must "find the government proved beyond a reasonable doubt that he 'acted voluntarily and intentionally and with specific intent to interfere with the victim's right to be free from unreasonable searches and seizures.'" (Doc. 31, pg. 2) (citing *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993). Defendant further argues that since the inquiry of "reasonableness" is inextricably linked with the mens rea determination provided by the statute,[2] that it is the exclusive province of the jury and inappropriate for comment by expert witnesses.

As a threshold matter, Defendant categorizes the probable testimony of Border Patrol Agents who witnessed the Incident as "expert" testimony. Defendant has provided no support for his conclusory statement that the Agents would testify as "experts" as opposed to "lay" witnesses. Law enforcement officers routinely testify, and are permitted to testify, as lay witnesses. *See e.g., United States v. Flores*, 536 F. App'x 709, 711 (9th Cir. 2013) ("The record indicates that the Drug Enforcement Administration ('DEA') agent testified as a lay witness, not as an expert witness, and that he testified based on his experience, which is a proper basis for lay opinion testimony"); *United States v. VonWillie*,

---

[2] 18 U.S.C. § 242 provides: "Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person in any State, Territory, Commonwealth, Possession, or District to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States, or to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race, than are prescribed for the punishment of citizens, shall be fined under this title or imprisoned not more than one year, or both; and if bodily injury results from the acts committed in violation of this section or if such acts include the use, attempted use, or threatened use of a dangerous weapon, explosives, or fire, shall be fined under this title or imprisoned not more than ten years, or both[.]"

59 F.3d 922, 929 (9th Cir. 1995) (Ninth Circuit finding that a law enforcement officer's lay testimony was permissible because it was "rationally based on his perceptions").

In its Response, the government explicitly rejected the notion that it would request that its percipient Border Patrol Agent witnesses provide expert testimony. *See* (Doc. 50, pg. 4) ("The defendant erroneously asserts that the government will ask percipient law enforcement witnesses to provide expert testimony. Instead, the government intends to call them as fact witnesses and offer their lay opinion testimony about their respective perceptions"). Defendant has provided no evidence as to why the Border Patrol Agent witnesses should be treated as expert, as opposed to lay, witnesses. Based on the government's position and the lack of evidence advanced by Defendant to the contrary, the Court will treat any potential Border Patrol Agent witnesses as lay witnesses. The witnesses may provide lay opinion testimony regarding their perceptions of the Incident.

Despite the prohibition against expert witnesses from stating an opinion about whether the Defendant did or did not have the requisite mental state or condition that constitutes an element of 18 U.S.C. § 242, there is no such corollary prohibition for lay witnesses. The Federal Rules of Evidence permit lay opinion testimony on an ultimate legal issue if it is rationally based on the witness's perception. *See United States v. Gadson*, 763 F.3d 1189, 1214 (9th Cir. 2014) ("Rule 704(b) is inapplicable by its terms. Officer Thompson was not testifying as an expert witness here. The defendants have cited no cases applying Rule 704(b) to a lay witness, and there is no basis for doing so under the text of the rule"); *see also United States v. Koon*, 34 F.3d 1416, 1430 (9th Cir. 1994), aff'd in part, rev'd in part on other grounds, 518 U.S. 81 (1996) (Ninth Circuit finding that the testimony of one police officer that another police officer was "out of control" was held to be admissible because it was rationally based on the officer's first hand observations and was helpful in determining factual issues central to the case). However, the Court finds that a limit on the number of witnesses that testify regarding their perception of the Incident is appropriate. Although the parties have not yet provided their witness lists, the Court will limit the number of witnesses that testify as to their direct perception of the Incident.

Defendant also argues that Border Patrol witnesses should be prevented from testifying regarding Border Patrol's Use of Force Policy. More specifically, Defendant seeks to prevent witnesses from opining on whether Defendant's conduct fell outside of the Policy's parameters. Although Defendant does not seek to preclude the admission of the Policy itself, Defendant argues that "[e]ven if 100 other agents interpret the Policy to preclude the method of apprehension undertaken by Mr. Bowen (assuming arguendo that is what he did), that does not mean that he subjectively intended to inflict more force than was necessary under the circumstances." (Doc. 51, pg. 4).

It has previously been "recognized that evidence of departmental policies can be relevant to show intent in § 242 cases." *United States v. Proano*, 912 F.3d 431, 439 (7th Cir. 2019). Furthermore, Courts have also permitted testimony pertaining to training materials. *United States v. Rodella*, 804 F.3d 1317, 1338 (10th Cir. 2015) (Tenth Circuit permitting testimony pertaining to a defendant officer's previous training was relevant to determine whether he acted "willfully"). In this case, testimony by Border Patrol Agent witnesses that Defendant's conduct was outside of the Policy's parameters is relevant to whether Defendant acted willfully, which is an essential element of § 242. If Defendant was aware of the Policy and his actions during the Incident were in violation of the Policy, it is certainly probative of Defendant's willfulness. The Court finds that this information is probative and relevant.

2. *Motion in Limine to Preclude Text Messages Pursuant to Evidence Rules 401 et seq.*

Defendant's second motion in limine relates to text messages obtained by the government. Some of the messages are exchanges between Defendant and fellow Border Patrol Agents discussing the Incident. Defendant contends that a significant portion of the text messages produced by the government should be precluded because they are irrelevant or highly prejudicial. Since filing its Response, the government has provided the Court and Defense counsel with a list of the text messages and proposed redactions it seeks to introduce at trial. The Court has reviewed the proposed messages and will address the admissibility of the messages by Defendant's categorical objections.

*A. Job Dissatisfaction*

Defendant exchanged numerous messages where he expressed his dissatisfaction with his job and Defendant alleges that:

> the fact that [he] was dissatisfied with his job is immaterial to the issues before the jury. In sum, it would be improper for the jury to infer that [Defendant's] feelings about the Border Patrol, or his responsibilities as an agent, or his interaction with aliens, caused him to disregard constitutional rights. Text messages of these genres should be excluded under Rule 403 as well.

(Doc. 53, pg. 4).

The Court finds that these messages are relevant. Pursuant to Federal Rule of Evidence 401, "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." An employee's dissatisfaction with his job tends to make it more likely that he would act in a manner that is inconsistent with his job duties and responsibilities. Defendant stated on numerous occasions that he was extremely unhappy with his job and that fact is certainly relevant to a determination of whether he committed an intentional act that would jeopardize his employment. Furthermore, the Court finds that the probative value of these messages are not substantially outweighed by the danger of unfair prejudice.

*B. Offensive Language*

Defendant exchanged numerous messages that include racially offensive language and Defendant seeks to preclude the inclusion of those messages. Defendant's argument is predicated upon his belief that his text messages containing racist and offensive language "have no bearing on any element of the offenses the Government will seek to prove at trial. Even if they have some connection, their probative value is so limited that the prejudice caused by their admission makes them excludable under Rule 403." (Doc. 53, pg. 4).

Defendant's argument is unavailing. It is undisputed that the admission at trial of Defendant's racial slurs is prejudicial to the Defendant. But any evidence that tends to

- 5 -

prove the government's case is by its very nature prejudicial. *See e.g. United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) ("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403. Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."). The Court has reviewed the messages and finds that the probative value of the messages outweighs any unfair prejudicial effect. This case involves an alleged violation of 18 U.S.C. § 242, which can be violated by willfully subjecting any person to the deprivation of rights or by willfully subjecting any person to different punishments, pains, or penalties, on account of such person being an alien, or by reason of his color, or race. The statute itself explicitly includes a scienter requirement specifically highlighting racial animus.

Courts have routinely held that the admission of racially offensive language, when race is at issue (i.e. when a civil rights statute is involved), is admissible because its probative value outweighs the danger of unfair prejudice. *See e.g.*, *Mullen v. Princess Anne Volunteer Fire Co.*, 853 F.2d 1130, 1133 (4th Cir. 1988) (finding that the "[u]se of racial aspersions obviously provides an indication that the speaker might be more likely to take race into account in making a hiring or membership decision. The probative value of this evidence is apparent from the nature of the words involved . . . It would be ironic indeed to conclude that use of the language of prejudice is irrelevant in a civil rights suit. Racial slurs represent the conscious evocation of those stereotypical assumptions that once laid claim to the sanction of our laws. Such language is symbolic of the very attitudes that the civil rights statutes are intended to eradicate"); *United States v. Magleby*, 241 F.3d 1306, 1319 (10th Cir. 2001) (In a case involving the violation of a civil rights statute, 18 U.S.C. § 241, the court found that the inclusion of racist song lyrics, while certainly harmful to the defendant's case, had probative value that outweighed its prejudicial effective); *United States v. Barrentine*, 39 F.3d 1182 (6th Cir. 1994) (In a case involving an alleged violation

of 18 U.S.C. § 241, the Sixth Circuit found that the inclusion of defendant's prior bad act of threatening an African-American teenager who was dating a Caucasian teenager by yelling "[s]end the nigger out" was relevant in proving an essential element of the offense charged and was therefore admissible).

Defendant refers to A.L.-A. and other aliens as "guat" even after the Incident, which Defendant contends was an accident. Under the government's theory, this evidence indicates that Defendant was more likely to have intentionally struck A.L.-A. with his vehicle because of his race. Since this language is probative of Defendant's intent, which is an essential element of § 242, and not outweighed by any unfair prejudice, it will not be excluded or redacted.

*C. Attorney Messages*

The final category of text messages Defendant seeks to preclude are messages pertaining to Jim Calle, Defendant's legal counsel through his labor union. Defendant exchanged text messages describing his interactions with Mr. Calle, including discussions about Mr. Calle providing suggestions about the Report, and discussions relating to Mr. Calle's reaction to the Incident. The Court has reviewed the relevant messages and finds that the messages are inadmissible. The messages discussing Mr. Calle are probative. That, for example, Mr. Calle was "freaking out" after viewing a video of the Incident, or that Mr. Calle said "this is like a very serious case" provides a potential motive for Defendant to fabricate the Report based upon the perceived seriousness of the Incident. However, despite the probative value of those messages, they should be excluded if their probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403; *Hankey*, 203 F.3d at 1172 ("This requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons 'substantially outweigh' the probative value.").

Here, the inclusion of messages discussing Mr. Calle are unfairly prejudicial to the Defendant. There is nothing inherently wrong about Defendant consulting legal counsel, especially when legal counsel is provided at no cost as a benefit of union membership.

However, the Court finds that there is a strong likelihood that this innocuous action would lead a jury to impermissibly infer that Defendant consulted legal counsel solely because he was guilty. Furthermore, other messages, such as messages where Defendant states Mr. Calle "made a few suggestions" to the Report, or that Mr. Calle stated that "preemptively putting that report out there will make it difficult to establish that [Defendant's] intent was to do harm" can lead to the impermissible inference that Mr. Calle either assisted Defendant with fabricating the Report or suggested that Defendant submit a fabricated report to "preemptively" stymie an investigation.

As noted earlier, the government provided the Court with the text messages it seeks to introduce at trial. Of those messages, the following messages pertaining to Mr. Calle are inadmissible and are indicated with a strikethrough[3]:

| # | Party | Message |
|---|---|---|
| 1 | To: Agent S. C. | ~~Hey I just sent you the original memo from 12/3 and the supplemental report that I just wrote. Have you seen the video?~~ |
| 2 | From: Agent S. C. | ~~Yes I saw it~~ |
| 3 | To: Agent S. C. | ~~T4~~ |
| 4 | From: Agent S. C. | ~~I read them real quick and only saw one typo in the last sentence of the supplement — I'm going to pick up my kids and then I'll look over them again to be sure~~ |
| 5 | To: Agent S. C. | ~~4~~ |
| 6 | From: Agent S. C. | ~~I think it looks like u covered what u and Jim talked about.~~ |
| 7 | From: Agent S. C. | ~~Did Jim say he wanted to look at it as well? Or just have u turn it in ?~~ |
| 8 | To: Agent S. C. | ~~I sent it to Jim also and he made a few suggestions that I'm going to add in before submitting it. How do I go about submitting it?~~ |
| 9 | From: Agent S. C. | ~~When do u go back to work~~ |
| 10 | To: Agent S. C. | ~~Monday~~ |
| 11 | From: Agent S. C. | ~~U can scan and email in through your chain of command and then when u go back in on Monday give them the original~~ |
| 12 | To: Agent S. C. | ~~T4 Ill submit tomorrow. Thanks~~ |
| 13 | From: Agent S. C. | ~~No prob~~ |
| 128 | From: Agent B. B. | ~~Have you talked to Chapman yet~~ |
| 129 | To: Agent B. B. | ~~Never talked to Chapman. I went up and talked to Calle the other day. I submitted a supplemental report that documents how it was unintentional, accidental and i was not familiar with how responsive the acceleration was on those new F-150s etc.~~ |
| 130 | From: Agent B. B. | ~~What did Calle say~~ |
| 131 | To: Agent B. B. | ~~He was clear that they could still try to push whatever they want to do~~ |

---

[3] Note: only text containing a strikethrough is inadmissible.

- 8 -

|     |                  |                                                                                                                                                                                                                                                                                      |
|-----|------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|     |                  | but me preemptively putting that report out there will make it difficult to establish that my intent was to do harm.                                                                                                                                                                 |
| 132 | From: Agent B. B. | Okay                                                                                                                                                                                                                                                                                 |
| 133 | From: Agent B. B. | But he gave no words of hope or anything like that                                                                                                                                                                                                                                   |
| 134 | To: Agent B. B.   | No he didn't say anything like that. I think the only way oig would still push it is if they had a witness say yes I thought Bowen intended to run the guy down. I don't think any of the agents that were there will say anything like that.                                        |
| 135 | To: Agent B. B.   | Supposedly they spent hours with supervisor Gonzales though.                                                                                                                                                                                                                         |
| 136 | From: Agent B. B. | Why                                                                                                                                                                                                                                                                                  |
| 137 | To: Agent B. B.   | who knows. oig detective stuff                                                                                                                                                                                                                                                       |
|     |                  |                                                                                                                                                                                                                                                                                      |
| 37  | To: Agent L.S.   | so im feeling the stress from this bs thinking about being taken away from my kid or something. Calle said[4] im looking at serious charges even though the Tonk was completely uninjured. Cant even imagine the stress you have been dealing with.                                  |
| 39  | From: Agent L.S. | Jim Calle knows about it Already?                                                                                                                                                                                                                                                    |
| 40  | To: Agent L.S.   | thats what i keep thinking but calle said this is like a very serious case. Then he said he was going to go talk to Chapman about it and call me back that was at like noon today and he never called back. He was like do not discuss this with anyone this is serious...           |
| 65  | To: Agent L.S.   | Lol. That's funny and sad at the same time. That first agent was so afraid to use any of his Force options. I talked to calle about that for a while today. guys are being made to think any use of force results in you being investigated and so they are letting tonks get away with way too much |

### D. Individual Text Messages

In addition to those messages, the Court finds that other individual messages are inadmissible pursuant to Rule 403, Fed.R.Evid. The Court will address the admissibility of these messages individually.

*1. Messages to/from Brent Bruchaski*

The Court finds the following messages between Defendant and Agent Bruchaski to be inadmissible. In this exchange, Agent Bruchaski pontificates about the relative difference between pushing a suspect and striking them with a vehicle. Defendant contributes nothing to this conversation. The Court finds these messages to have no probative value and are thus irrelevant and inadmissible.

| 8 | From: Agent B. B. | My belief is that there's no difference between you using your hands to push somebody down or the bumper of a vehicle when they are running |

---

[4] To promote internal comprehension, the words "Calle said" should be replaced with "I've heard that."

|    |                  |                                                                                                                                                                                                                                                                                                                 |
|----|------------------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|    |                  | from you                                                                                                                                                                                                                                                                                                        |
| 9  | From: Agent B. B. | It'll be just like you using your baton or you taser when you're running adter somebody and leasing with that tool and using that to push them down how's there a difference |
| 10 | From: Agent B. B. | It's not even a u of f incident                                                                                                                                                                                                                                                                                 |
| 11 | From: Agent B. B. | Keep this in your back pocket. "What I did was not grossly negligent but perhaps extremely careless." That statement If they belief it will keep you out of any criminal charges. And I want to make it very clear that I do not believe it was negligent nor even careless because I would have probably done the same thing in your position. |
| 12 | From: Agent B. B. | Anyways have a good one and just don't stress over it                                                                                                                                                                                                                                                           |
| 13 | To: Agent B. B.   | T4 thanks                                                                                                                                                                                                                                                                                                       |

2. *Texts to/from Lonnie Swartz*

The Court finds the following messages between Defendant and Agent Swartz to be inadmissible. These messages contain no probative value or any slight probative value they contain is substantially outweighed by the danger of misleading the jury or wasting time.

|    |                  |                                                                                                                                                                                                                                                                                                                                              |
|----|------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| 27 | From: Agent L.S. | Pulled him off the fence. Good shit.                                                                                                                                                                                                                                                                                                         |
| 28 | To: Agent L.S.   | fuck i had not heard this! I was off today but they have been seriously wild lately. I used an f150 to do a human pit maneuver on a guat running from an agent. it was in front of cameras and everybody thought i ran him over so they made it into an SIR even though the tonk was totally fine. just a little push with a ford bumper |

3. *Texts to/from Sylliasen*

The Court finds the following messages between Defendant and Agent Sylliasen to be inadmissible. These messages have no probative value or any slight probative value they contain is substantially outweighed by the danger of unfair prejudice.

|    |                 |                                                                                                     |
|----|-----------------|-----------------------------------------------------------------------------------------------------|
| 7  | From: Agent S.  | CIT??                                                                                               |
| 8  | From: Agent S.  | That story sounds super intense. Hope it all pans out                                               |
| 9  | From: Agent S.  | You seen that vid of the Texas Agent with the tonk on the ladder filmed by other tonk?              |
| 10 | To: Agent S.    | No im joking they werent called that I know of.                                                     |
| 11 | To: Agent S.    | Yea I saw that vid. that first agent was so scared to use any force on that resisting tonk it was sad |
| 12 | From: Agent S.  | Did you gas hiscorpse or just use regular peanut oil while tazing?? For a frying effect. What       |
| 13 | From: Agent S.  | I saw the agent bouncing him on the fence/ladder?                                                   |
| 14 | To: Agent S.    | Guats are best made crispy with an olive oil from their native pais.                                |
| 15 | From: Agent S.  | Oh shite                                                                                            |

Accordingly, IT IS ORDERED:

1. Defendant's Motion in Limine to Preclude Witnesses from Opining on Ultimate Legal Issue (Doc. 31) is **denied**.
2. Defendant's Motion in Limine to Preclude Text Messages Pursuant to Evidence Rules 401 et. seq. (Doc. 53) is **denied in part and granted in part**.

Dated this 17th day of July, 2019.

Honorable Cindy K. Jorgenson
United States District Judge