Sean C. Chapman
**Law Office of Sean C. Chapman, P.C.**
100 North Stone Avenue, Suite 701
Tucson, Arizona 85701
Telephone: (520) 622-0747
Fax: (520) 628-7861
Arizona State Bar No. 012088
Attorney for Defendant Bowen
Sean@seanchapmanlaw.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR 18-01013-001-TUC-CKJ(BPV) |
| Plaintiff, | ) | |
| v. | ) | **OBJECTION TO PRESENTENCE REPORT AND SENTENCING MEMORANDUM** |
| Matthew Bowen, | ) | |
| Defendant. | ) | |

The Defendant MATTHEW BOWEN, through counsel Sean C. Chapman of

THE LAW OFFICE OF SEAN C. CHAPMAN, P.C., pursuant to Rule 32(f) of the

Federal Rules of Criminal Procedure and 18 U.S.C. § 3553, hereby submits this

Objection to the Presentence Investigation Report and Sentencing Memorandum in

support of a sentence of probation, which is sufficient, but not greater than necessary, to

achieve the purposes of sentencing.

/ / /

/ / /

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND BACKGROUND

On December 3, 2017, the victim was illegally in the country near the Mariposa Port of Entry in Nogales, Arizona.  When spotted, he attempted to flee from numerous Border Patrol Agents, including Matt Bowen, by running south toward Mexico.  Agent Bowen was pursuing the victim in his vehicle, and tapped the victim from behind, causing him to fall down.  The victim was arrested and declined medical attention.  He was taken to a local hospital anyway and determined to have some minor abrasions on his knees.   He did not complain of any additional injuries at that time.

Mr. Bowen admits that he acted carelessly, and that he used his vehicle in an inappropriate fashion while attempting to apprehend the victim in this case.   He accepts responsibility for his conduct.

Mr. Bowen served as a U.S. Border Patrol Agent for approximately 11 years. He resigned after pleading guilty to a misdemeanor violation of 18 U.S.C. § 242, which prohibits anyone acting under color of law to willfully deprive someone of a right secured by the Constitution.  Presentence Report ("PSR") ¶ 55. The factual basis for the offense is described at ¶ 4 of the PSR, and although Mr. Bowen disputes that his vehicle "nearly ran over" the victim, he acknowledges using an unreasonable amount of force to effectuate the victim's apprehension. (Doc. 108 at p. 6.)

Pursuant to the plea agreement, the parties have agreed to a sentencing range of 0-12 months incarceration, which is the statutory range for any misdemeanor conviction. 18 U.S. § 3583(b)(3); PSR ¶ 62. (Doc. 108 at p. 3 ¶ 9.) (The government has agreed not to make a sentencing recommendation). The Guidelines range is higher, at 12-18 months, because U.S.S.G. § 2H1.1 does not distinguish between felony and misdemeanor civil rights violations. PSR ¶¶ 23-32. Therefore, the Probation Department's recommended a sentence of 6 months imprisonment, while characterized as a downward variance, is really at the mid-point of Mr. Bowen's exposure to prison. The justification for the term of incarceration is identified as "aggravation," and it is this evidence to which Mr. Bowen objects. Specifically, this Court should not base its sentencing calculus on any prior "allegations of the defendant's involvement in inappropriate use of force and abuse of power incidents, which do not appear to have resulted in formal punishments." PSR at pp. 17-18. Further, Mr. Bowen demonstrates below that incarceration of any length of time is not necessary to achieve the goals of sentencing. 18 U.S.C. § 3553(a).

## II.  LAW

### A.  "Aggravation" Evidence

The PSR describes as "aggravation" six instances that occurred many between 2012 and 2015, the most recent being two full years before the crime committed herein. PSR ¶¶ 10-14. Five of the incidents were noticed by the Government as "other acts" it

would seek to admit at trial pursuant to Federal Rule of Evidence 404(b). (Doc. 21.) Mr. Bowen filed a Response (Doc. 32), and prior to trial the Government withdrew its notice. (Doc. 49.) Therefore, the Court did not rule on the admissibility of this evidence.

(1) January 12, 2012 Incident (PSR ¶ 14): The complainant and his parents contacted DHS after Bowen effected a traffic stop on a vehicle driven by the complainant. The complainant acknowledged that he refused to get out of his vehicle, argued with Bowen and gave him "attitude" before Bowen forced him out of the car and onto the ground. **The report status is listed as "Closing Report" and does not indicate that any action was taken by DHS as a result of the allegation contained therein.** (Doc. 32 at p. 2.)

(2) March 16, 2015 Incident (PSR ¶ 13): The report describes Bowen's apprehension of an individual among a group that scattered in the desert. Bowen tackled the individual from behind, causing a "busted lip" when he hit the ground. Another agent disagreed that it was necessary to arrest the individual in that manner. The final page of the report states**, "This concludes the investigation" and does not indicate that any action was taken by DHS as a result of the allegation contained therein.** (Doc. 32 at pp. 2-3.)

(3) April 5, 2015 Incident (PSR ¶ 13): An alien reported that following his apprehension he fell several times on the way to the Border Patrol vehicle due

4

to the steep terrain, and each time Bowen pulled him up by the handcuffs, causing abrasions on his wrist. **The report does not indicate that any findings were reached or action taken.** (Doc. 32 at p. 3.)

(4) September 19, 2015 Incident (PSR ¶ 12): Numerous interviews failed to corroborate the allegation of excessive force in the arrest of a juvenile; therefore, **the allegation was determined "Not Sustained."** (Doc. 32 at p. 3.)

(5) October 2, 2015 Incident (PSR ¶ 11): DHS conducted multiple witness interviews and an interview of Bowen after an alien complained that Bowen drove in an intentionally erratic manner while the alien was handcuffed. **The allegations were determined "Not Sustained" and no further action was taken.** (Doc. 32 at p. 3.)

The sixth incident that was included in the PSR as aggravating had nothing to do with Mr. Bowen's interaction with suspects. The incident occurred on September 7, 2012 and allegedly involved damage to a Government vehicle that Mr. Bowen was driving. PSR ¶ 10. The PSR notes that Mr. Bowen received an Official Letter of Reprimand, and thus appears to be the only formal admonishment he received as a result of any of the incidents described in the PSR.

Mr. Bowen objects to the PSR writer's conclusion that these incidents demonstrate his "inappropriate use of force and abuse of power" and "show that the incident in the instant offense was not out of character for the defendant." PSR at p. 18.

5

All of the allegations were investigated by DHS and, except for the one resulting in a letter reprimand, were determined to be so lacking in credibility as to either warrant a finding of "not sustained" or not to merit any action at all. As the PSR acknowledges, Mr. Bowen was not disciplined or otherwise sanctioned as a result of any of the allegations. Id. To take matters that were resolved in Mr. Bowen's favor and use them to justify his imprisonment is fundamentally unfair.

Mr. Bowen estimates that he arrested roughly 10,000 individuals, many of whom were serious/dangerous criminals over the course of his 11 year career. This estimate is backed up by the numbers. From October 1, 2008 through September 30, 2018, the Tucson Sector of the U.S. Border Patrol apprehended nearly 1.5 million undocumented aliens. (Ex. 1, accessible at https://www.cbp.gov/sites/default/files/assets/documents/2019-Mar/bp-southwest-border-sector-apps-fy1960-fy2018.pdf). The lowest annual number of apprehensions, at 38,657, was in 2017. (Id.) That would correlate to an average of 743 arrests per week, or 106 per day, for an average of about 35 arrests per 8-hour shift in the Tucson sector. Viewed from the more relevant context of his entire career, the only fair conclusion that should be drawn is that the incidents described at PSR ¶¶ 10-14 were at best aberrant. Mr. Bowen's contributions cannot should not be negated by the mistakes he's made; instead, his 11-year service to our nation's security is a factor that weighs against his incarceration.

### B. The Sentencing Framework

Congress enacted 18 U.S.C. § 3553(a) in order to ensure that judges impose sentences that are "sufficient, but not greater than necessary, to comply with the purposes" of sentencing, such as deterrence, punishment, and public safety. 18 U.S.C. § 3553(a), (a)(2); *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013) (citing *Pepper v. United States*, 562 U.S. 467 (2011)). The factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims. 18 U.S.C. § 3553(a). These factors represent the major sentencing considerations of "retribution, deterrence, incapacitation and rehabilitation." *Tapia v. United States*, 564 U.S. 319, 325 (2011). Accordingly, the Supreme Court has consistently instructed that "the punishment should fit the offender and not merely the crime," and thus judges should use "the fullest information possible concerning the defendant's life and characteristics" to determine the appropriate sentence. *Trujillo,* 713 F.3d at 1008-09 (citing *Pepper*, 562 U.S. at 487-88, and quoting *Williams v. New York*, 337 U.S. 241, 246-47 (1949)); *Gall v. United States*, 552 U.S. 38, 49-50 (2007) ("[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then

consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party."); accord *United States v. Ringgold*, 571 F.3d 948, 950 (9th Cir. 2009). Importantly, the Guidelines place no limit on the number of potential factors that may warrant a variance from the advisory range. *Burns v. United States,* 501 U.S. 129, 136-137 (1991).

### 1. The Kinds of Sentences Available

18 U.S.C. §§ 3553(a)(3) and (4) requires the Court to consider the kinds of sentences available to the defendant. As mentioned above, the Guidelines range, at 12-18 months, is higher than the statutory maximum because U.S.S.G. § 2H1.1 does not distinguish between felony and misdemeanor civil rights violations. PSR ¶¶ 23-32. The statutory range for any misdemeanor conviction is 0-12 months and is co-extensive with the plea agreement. 18 U.S. § 3583(b)(3); PSR ¶ 62. (Doc. 108 at p. 3 ¶ 9.) Probation is not authorized under the Sentencing Guidelines but Mr. Bowen may be placed on probation for up to five years pursuant to 18 U.S.C. ¶ 3561(c)(2). PSR ¶¶ 64-65. If a term of imprisonment is imposed, the Court may sentence Mr. Bowen to a term of one year supervised release to follow. PSR ¶¶ 62-63.

While the Supreme Court permits appellate courts to apply a presumption of reasonableness when reviewing sentences within the Guideline range, the Court has also made clear that a sentencing judge may not apply the same presumption. *Rita v. United States*, 551 US. 338, 351 (2007); *Gall v. United States*, 552 U.S. at 50; *Nelson v.*

*United States*, 555 U.S. 350, 352 (2009). Mr. Bowen, for the reasons set forth herein and based on the §3553 factors, seeks a sentence of probation.

    2.    *The Nature and Circumstances of the Offense*

18 U.S.C. §3553(a)(1) requires the Court to consider "the nature and circumstances of the offense" in order to determine how to sufficiently meet the objectives of sentencing. Mr. Bowen agrees with the summary of the offense conduct at PSR ¶¶ 4-8.

    3.    *The History and Characteristics of the Defendant*

18 U.S.C. §3553(a)(1) requires the Court to consider "the history and characteristics of the defendant" in order to determine how to sufficiently meet the objectives of sentencing. This duty reflects the defendant's right to individualized sentencing. *Beckles v. United States*, 137 S.Ct. 886, 896 (2017); 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for purposes of imposing an appropriate sentence."). Here, it is important to remember that Mr. Bowen's actions that led to his conviction are anomalous when viewed in the context of his life, and they neither define who he is, nor who is he destined to be.

A review of Mr. Bowen's background leads to one simple conclusion: he is a hard-working family man. Mr. Bowen was born and raised in South Carolina, primarily

by his mother and step-father. He is close with both of them, and he also has close relationships with his sister and step-brother. PSR ¶¶ 41-43. Mr. Bowen went to high school in Maryland because he lived with his father at that time. PSR ¶¶ 45, 50. He returned to South Carolina after high school, to work and go to school. Mr. Bowen worked at a number of different jobs in the years following his graduation, including as a house painter, grocery store and retail sales clerk. PSR ¶ 56. At the same time, Mr. Bowen attended Coastal Carolina University, eventually earning a B.S. in Business Administration in 2007. PSR ¶ 50. After that, Mr. Bowen went through the Border Patrol Academy. PSR ¶ 51. He has lived in Southern Arizona since his Border Patrol assignment to the Tucson Sector in 2008. PSR ¶ 45. Mr. Bowen is fluent in Spanish. PSR ¶ 50.

Mr. Bowen and his wife, Candy, married in 2009. They have two young children. Candy describes her husband as "a great father, avid dog lover, and a good person." PSR ¶ 44. Mr. Bowen spends his free time with his children, exercising, and learning jiu-jitsu. He wants nothing more than to be able to continue living with his family. PSR ¶ 46.

Knowing that he had to provide for his family outside of the Border Patrol, Mr. Bowen founded a trucking company in October of 2017. PSR ¶ 53. He also earned his real estate license in August of 2018. PSR ¶ 52. He worked in real estate for one year and did well, but lost his job as a result of the media coverage of this case. PSR ¶ 54.

Mr. Bowen would like to continue working in real estate when this case is resolved, and in the meantime he is dedicated to growing his trucking business. PSR ¶ 46.

Pursuant to U.S.S.G. § 5K2.0, this Court should consider the negative impact a period of incarceration will have on Mr. Bowen's family. The negative, collateral consequences of a sentence of imprisonment is a factor that mitigates against a prison sentence where, as here, incarceration may serve a very limited purpose in light of the objectives outlined in § 3553(a). Mr. Bowen's strong marriage and close family relationships likewise mitigate against the need for incarceration as a deterrent or means of protecting the public from future harm. § 3553(a)(2)(B), (C)

> 4. *The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct and Protect the Public*

Sections 3553(a)(2)(B) and (C) require the Court to consider "the need for the sentence imposed…to afford adequate deterrence to criminal conduct" and "protect the public from further crimes of the defendant." Mr. Bowen will turn 40 years old on his birthday early next year. He has zero criminal history points because he has never been arrested, charged or convicted of any criminal offense, whether as a juvenile or an adult, prior to his involvement in the case presently before the Court. PSR ¶¶ 33-39. In addition, Mr. Bowen has been under the supervision of Pretrial Services since June 29, 2018. PSR ¶ 1. He has complied with all of the conditions of his supervision, attended all court necessary court hearings, and is not viewed as a flight risk or danger to the community. PSR at p. 18.

Mr. Bowen's lack of criminal history and long-time compliance with conditions of release strongly suggests that probation will afford an adequate deterrence to criminal conduct. 18 U.S.C. § 3553(a)(2)(B). These factors, as well as the other factors mentioned herein, make Mr. Bowen a low risk to recidivate and thus he poses little danger, if any, to the public. 18 U.S.C. 3553(a)(2)(C).

> 5.  *The Need for the Sentence Imposed to Provide Educational, Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner*

In addition, Mr. Bowen in good health, physically and mentally. PSR ¶¶ 47-48. He does not use illicit drugs or consume alcohol excessively. PSR ¶ 49. These factors suggest a lower risk of recidivism. *Bureau for Justice Statistics and Office of Probation and Pretrial Services*, "Recidivism of Offenders on Federal Community Supervision," (2012)[1] at p. 12 (finding that offenders with a history or current drug abuse problem and/or mental health problem have higher re-arrest and revocation rates). Moreover, incarceration is not needed to provide Mr. Bowen with treatment for these issues, or for educational or vocational training. § 3553(a)(2)(D).

> 6.  *The Seriousness of the Offense, Respect for the Law, Just Punishment*

Section 3553(a)(2)(A) is generally viewed as the punitive or retributive component of § 3553(a). *See Tapia*, 564 U.S. at 325. Where, as here, the offense is not

---

[1] https://www.ncjrs.gov/pdffiles1/bjs/grants/241018.pdf

violent and the defendant is a first offender, Congress has encouraged the Sentencing Commission to craft Guidelines that reflect the general appropriateness of imposing a sentence other than imprisonment. *Id.* at 326 (citing § 3582(a) as providing that "imprisonment is not an appropriate means of promoting correction and rehabilitation.")

Mr. Bowen has felt the consequences of his actions on account of this prosecution and the media attention it drew and the loss of his employment. He will make amends to the victim by paying the restitution ordered by the Court. PSR ¶¶ 15, 18, 70-71. A sentence of probation appropriately reflects the seriousness of Mr. Bowen's conduct, will have the impact of promoting Mr. Bowen's respect for the law, and provide just punishment given all of the facts and circumstances under the § 3553 rubric.

## III. CONCLUSION

For all the foregoing reasons, a sentence of probation will achieve the major sentencing considerations of retribution, deterrence, incapacitation and rehabilitation. *Tapia*, 546 U.S. at 325. Such a sentence will therefore fulfill the mandate of § 3553(a) to impose as sentence that is sufficient, but not greater than necessary, and is an appropriate sentence to impose on Mr. Bowen.

Respectfully submitted this 7th day of November, 2019.

LAW OFFICE OF SEAN CHAPMAN, P.C.

BY:   /s/  Sean Chapman
            Sean Chapman

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 7, 2019, he caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification to the following:

Monica Ryan
Monica.Ryan@us.doj.gov
US Attorney's Office – Tucson, AZ
405 W. Congress, Suite 4800
Tucson, AZ 85701-4050

Serena Lara